UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SAM LI,
Plaintiff,

v.                                                                    CIVIL ACTION NO. 1:17-cv-10670-MPK

FU HING MAIN RESTAURANT, INC.
d/b/a FUHING CHINESE RESTAURANT,
and MAN CHEE LI,
Defendants.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#36).

KELLEY, U.S.M.J

I. Introduction.

This is a case in which a delivery driver alleges that a restaurant did not pay him fair

wages. Defendants' motion for summary judgment is denied because there are disputed issues of

fact as to whether the restaurant meets the required annual gross sales amount of $500,000 as

required by the Fair Labor Standards Act (FLSA, or the Act).

Plaintiff Sam Li filed a four-count complaint seeking monetary relief against a restaurant

and the restaurant's owner, under the FLSA, 29 U.S.C. § 201 *et seq*., (Count I, minimum wage

violations, and Count III, overtime wage violations); the Massachusetts Minimum Fair Wage

Act, Mass. Gen. Laws ch. 151, §§ 1A-1B (Count II); and the Massachusetts Wage Act, Mass.

Gen. Laws ch. 149, §§ 148, 150, (Count IV). (#1.) Plaintiff alleges that the Fuhing Chinese

Restaurant in Haverhill, Massachusetts, and the restaurant's owner, Man Chee Li, violated his

rights under these statutes by failing to pay him a fair wage, including minimum wages and

overtime pay, which he had earned while working as a delivery driver. *Id*. at 2. He seeks unpaid

wages, liquidated damages, pre-and post-judgment interest, and attorneys' fees and costs. *Id*.

Defendants filed a Motion for Summary Judgment (#36), claiming that they are exempt

from the FLSA because plaintiff has not established that he was engaged in interstate commerce,

and further because he has not established that the restaurant meets the required annual gross

sales amount of $500,000. (#36-4 at 2.) Plaintiff opposed and defendants filed a response (##37-

1, 38.)

## II. The Facts.

The facts are undisputed except as indicated. Fuhing Chinese Restaurant is located in

Haverhill, Massachusetts. (#37-1 ¶ 2.) Almost all of the restaurant's income is derived from take-

out and delivery orders; it is not an "eat-in" restaurant. *Id*. ¶ 3; ##36-4 at 3; 39 at 31. Plaintiff

worked for defendants as a delivery driver for roughly two years, in 2014 and 2015. (#37-1 ¶ 1.)

During this period, defendants employed 3 to 4 people, including plaintiff and owner Man Chee

Li. *Id*. ¶ 4. During all relevant times, plaintiff was the only delivery driver employed; the owners'

son filled in when plaintiff was not working. *Id*. ¶ 5; #39 at 44.[1]

In support of their motion for summary judgment, defendants submitted tax returns that

show the restaurant's gross annual sales in 2014 were $258,646.00 and in 2015 were

$301,643.00. (#37-1 ¶ 10.) Defendants also produced transcripts from the Internal Revenue

Service and that they claim verified the information contained in their tax returns. *Id*. ¶ 11. They

also state that their accountant "verified the Fu Hing's Gross annual income for 2014-16." *Id*. ¶

12. Defendants further asserted that in 2014 the Commonwealth of Massachusetts Executive

---

[1] Docket #39 is the complete transcript of the plaintiff's deposition, which defendant provided to the court
at the court's request.

Office of Labor and Workforce Development conducted an audit and found defendants' records "in compliance with the law." *Id.* ¶ 13. In addition to these documents, defendants produced bank deposit forms from the relevant years to show that their deposits were in accordance with their tax returns. (##36-8, 36-9.) Defendant Man Chee Li stated in her declaration attached to the motion for summary judgment that the restaurant has never had over $500,000 in gross annual sales. (#38 ¶ 11.)

In the complaint, plaintiff alleges that during the first year he worked for the restaurant, December 2013 to December 2014, he worked seven days a week, twelve hours per day, except weekends, when he worked thirteen and a half hours per day on Fridays and Saturdays, and eleven hours on Sundays. (#1 at 5.)  In the second year, from January 2015 to December 2015, he worked six days a week, the same hours as before, except he had Tuesdays off. *Id.* He alleges that defendants paid him a monthly wage of $1,200 in cash, regardless of the hours he worked, and thus paid him less than the minimum wage and did not pay him overtime wages due. *Id.* at 4-6. At his deposition, it became clear that plaintiff did not have any records to substantiate his claims. He estimated the hours he worked by referring to the business hours printed on the restaurant's menu; he alleges that he worked whenever the restaurant was open for business. (#39 at 61-2.)

The parties have conflicting methods of calculating the restaurant's gross annual sales. In the complaint, other than an allegation that defendants had gross sales in excess of $500,000, the only statement having to do with the restaurant's sales is that the restaurant charged "a minimum of $10 for delivery orders." (#1 at 3, 6.) At his deposition, plaintiff testified that he made 40 to 50 deliveries on an average day, but counsel for defendants never asked him about the value of the orders. (#39 at 33.) Defendants claim that plaintiff would deliver approximately 30 orders per

day, and that the average price of each order was "$10 or less." (#37-1 ¶¶ 7-8.) In his declaration attached to his opposition to defendants' motion for summary judgment, plaintiff asserts that the average price of each order was between $20 and $30, and "there were occasional party platters that cost $100-200." (#37-4 ¶ 8.) He estimates that "the ratio of takeout to delivery was approximately 4:6 during warmer months and 6:4 during colder months." *Id*. ¶ 14. He further states that approximately 60 percent of the customers paid in cash. *Id*. ¶ 10.

Plaintiff contends that according to his "personal knowledge and observations made throughout his employment," given the number of deliveries he made and the average price of each one, the restaurant made gross sales of at least $409,500 per year from deliveries alone, not counting other sales. (#37 at 9.)[2] Plaintiff argues that since takeout orders must have added to this number, his calculations bring "Defendant's annual gross sales to above $500,000." (#37-1 ¶ 14.)

Defendants argue that accepting plaintiff's claim that he made 50 deliveries daily, 365 days per year, but reducing the average delivery to $10, "the total amount would be $182,000." (#36-4 at 10.) Defendants further argue that as deliveries accounted for "almost all revenue," defendants would have to generate another $317,500 from takeout orders to reach the $500,000 threshold, which "any reasonable juror would surely conclude" was an unrealistic calculation. *Id*.

### III. Summary Judgment Standard

"Summary judgment is utilized to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose." *Plumley v. S. Container, Inc.*, 303 F.3d 364, 367 (1st Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to

---

[2] Plaintiff calculates this as "45 deliveries x $25 x 7 days x 52 weeks = $409,500." (#37 at 9 n.5.)

judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "'Material' refers to a contested fact that has the potential to change the outcome of the trial under the applicable law if the contest is resolved in the nonmovant's favor. 'Genuine' means that the evidence about the contested fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (citing *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote omitted).

When determining if summary judgment is appropriate, the court reviews the record in the light most favorable to the nonmovant and attributes all reasonable inferences in the nonmovant's favor. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000).

IV. <u>Discussion</u>.

A. <u>FLSA Coverage</u>.

In order to bring an FLSA claim, a plaintiff has the burden to prove "a nexus to interstate commerce sufficient to trigger coverage under the Act." *Martinez v. Petrenko*, 792 F.3d 173, 174 (1st Cir. 2015).[3] An employee can prove this nexus by showing that he or she engaged in commerce for the employer within the meaning of the Act, (commonly referred to as "individual coverage"), or "by showing that the employer has other employees who engaged in commerce within the meaning of the Act and that the employer also generated annual gross sales of not less than $500,000" (commonly referred to as "enterprise coverage"). *See id.* at 174-75 (quoting 29 U.S.C § 203(s)(1)(A)). "If enterprise coverage applies, all of the enterprise's employees are protected under the FLSA, even if they are not personally involved in interstate commerce." *Cruz v. Boston Litigation Solutions*, 2016 WL 3568254, at *5 (D. Mass. May 24, 2016).

"As a basic rule, 'if [the plaintiff] did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.'" *Jian Long Li v. Le Qin Zhao*, 35 F. Supp. 3d 300, 308 (E.D.N.Y. Aug. 8, 2014) (quoting *Yang Li v. Ya Yi Cheng,* No. CV 10-4664, 2012 WL 1004852, *4 (E.D.N.Y. Mar. 23, 2012)). Defendants argue that plaintiff "cannot show an issue of fact for trial regarding individual coverage." (#36-4 at 9.) In fact, plaintiff did not allege individual coverage in the complaint, *see* #1, and in his opposition, he concedes that individual coverage does not apply. (#37 at 2.)

Plaintiff does allege in the complaint that the restaurant is subject to the FLSA under enterprise coverage. (#1 at 3.) Defendants agree that plaintiff has shown that the restaurant's

---

[3] The First Circuit has found this requirement to be an element of the claim and not a jurisdictional limitation. *Martinez,* 792 F.3d at 175 (citing *Chao v. Hotel Oasis, Inc*., 493 F.3d 26, 33 (1ˢᵗ Cir. 2007)).

employees engaged in commerce within the meaning of the Act. (#36-4 at 6.) Local businesses

fall within the reach of the FLSA if the businesses' workers handle goods that have moved or

been produced in interstate commerce. *Archie v. Grand Cent. P'ship, Inc*., 99 F. Supp. 504, 530

(S.D.N.Y. 1998). "[C]ourts have recognized that 'virtually every enterprise in the nation doing

the requisite dollar volume of business is covered by the FLSA.'" *Cruz*, 2016 WL 5368254, at \*6

(quoting *Drice v. My Merchant Servs., LLC*, No. CV 2015-0395, 2016 WL 1266866, at \*4

(E.D.N.Y. Mar. 4, 2016) (citations omitted)). *See Li*, 2012 WL 1004852, at \*4 ("the restaurant's

purchase of rice and other ingredients seems enough to satisfy the first part of the statutory

requirement for enterprise coverage"). Thus, given that defendants' business involves the

handling of goods that have moved in interstate commerce, plaintiff need only demonstrate that

there is a genuine issue of material fact regarding whether defendants' annual gross sales were at

least $500,000 to defeat summary judgment on this claim. *Matsushita Elec. Industrial Co.,* 475

U.S. at 586–587 (1986).

    B.  The parties' proof concerning the gross sales of the restaurant.

       1.  Defendants' proof.

    Defendants contend that the restaurant has never grossed $500,000 or more. (#36-3 ¶ 3.)

In support, defendants produced tax returns, bank deposit records, and a declaration from the

owner to establish that their gross sales for the years 2014 and 2015 did not reach $500,000.

(##36-3, 5-6, 8-9, 11.)

    Defendants aver that the tax returns are "corroborated by transcripts from the Internal

Revenue Service and an accountant" (#36-4), but the court does not have enough information to

accept this statement. Defendants have produced no information establishing that the transcripts

from the Internal Revenue Service (IRS), *see, e.g*., #36-5 at 4-8, signify that the IRS affirmed the

accuracy of the amount of gross receipts stated in the tax returns. Similarly, there is a stamp from a certified public accountant at the bottom of the tax forms in the place for "paid preparer," *see, e.g.*, #36-5 at 3, but again, defendants have provided no information demonstrating that the accountant, by preparing the tax form and stamping it, was vouching for the accuracy of the numbers reported on the return.

Defendants also assert that "[a]n audit by Massachusetts Executive Office of Labor performed an audit [sic] for the calendar year 2014, as it does every three years, and it verified the accuracy of Defendant's financial records." (#36-4 at 11.) The report of the audit, attached to defendants' motion, states that an audit was conducted by the Department of Unemployment Assistance for the calendar year 2014 and it was determined that the employer was in compliance with "the Massachusetts Unemployment Insurance law section 151A." (#36-11.) The court does not know how the audit was conducted, including what documents were examined, and therefore does not give the report any weight.[4]

Finally, the bank statements, which are difficult to read, count for little. (##36-8 and 36-9.) The court accepts defendants' assertion that the bank records reflect that in 2014 and 2015 the restaurant's deposits came to about $250,000 per year (#36-4 at 7), but the court cannot tell, for example, whether there were any cash deposits and if so, how much the cash deposits were, versus deposits from credit cards.[5] If, for example, the bank records show only credit card

---

[4] The owner, in her affidavit, states that as a result of the audit, the restaurant was found to be "in compliance," "based on the review of payroll records/disbursement records and related documents at the audit." (#36-3 at 2.) This description of the audit is not sufficient for the court to accept that the audit constitutes verification that the numbers on the restaurant's tax returns are correct.

[5] For 2014, for example, January is the only month for which the individual deposits are shown, and it appears that in that month there were two deposits for cash that total approximately $258, out of total deposits of $22,372.17. (#36-8 at 2-3.) The owner of the restaurant states in her declaration that the restaurant depends mainly on deliveries, there was a $10 minimum for credit card orders, there was no

deposits, or mostly credit card deposits, one might ask whether the restaurant made additional sales in cash, and used the cash in order to pay expenses, such as employees' salaries.

Turning to the tax returns, it is true, as defendants argue, that tax returns may be used to establish a business' gross sales, *see Martinez v. Petrenko*, No. 12-cv-331-JD, 2014 WL 109073, at *10 (D.N.H. Jan. 13, 2014), and may support summary judgment for the defendant business. *See, e.g.*, *Jian Long Li*, 35 F. Supp. 3d at 306 (holding that summary judgment for defendant was appropriate, considering defendant's tax returns and bank records, because even if one assumed that defendant's bank records did not accurately reflect gross sales and one added in additional amounts as supported by the evidence, the amount of gross sales was still far below $500,000). However, the court must consider whether proffered tax returns are reliable.

Plaintiff challenges the accuracy of defendants' tax returns by pointing out that in the "salaries and wages" section, the defendants reported totals of $19,896 and $30,562 for 2014 and 2015, respectively. (#37 at 6.) If one accepts that defendants paid plaintiff $1,200 monthly, his wages in 2014 were $14,400.[6] The parties stipulated that the restaurant employs three to four people, including the owner. (#37-1 ¶ 4.) Therefore if the business employed even one employee in addition to plaintiff in 2014, the wages are under-reported on the tax return. As the minimum wage in Massachusetts increased from $8 to $9 in 2015, the amount for two employees that year

---

minimum order for deliveries, and many deliveries were under $10. (#36-3 at 2.) Thus one would expect the restaurant to receive a substantial amount of its receipts in cash.

[6] In their memorandum in support of their motion, defendants state that plaintiff was paid "in excess of $4,000 per month, plus rent-free housing, utilities and meals." (#36-4 at 2 n.1.) Defendants offer no evidence supporting this statement as to how much plaintiff was paid, and the court will not consider a factual assertion made in a footnote in a memorandum. At any rate, if one were to accept this figure as true, then the salary totals in the defendant's tax returns are even more questionable, as plaintiff's salary alone would have been $48,000 per year.

would come to $37,440,[7] which is still below the reported amount of $30,562. Therefore, the court considers the tax returns to be less than conclusive. *See Amaya v. Superior Tile and Granite Corp.*, No. 10 Civ. 4525 (PGG), 2012 WL 130425, at *4 (S.D.N.Y. Jan. 17, 2012) (holding, after trial, that defendant's tax returns were "entirely unreliable" because they were "utterly inconsistent" with the number of employees employed by the business, given the employees' salaries); *Rocha v. Bakhter Afghan Halal Kebabs, Inc.,* 44 F. Supp. 3d 337 (E.D.N.Y. 2014) (finding a material dispute of fact where defendant's rent and employee salaries differed from the amount claimed on its tax return, thus calling into doubt the total sales claimed on the tax return).

Notwithstanding the issues with the defendants' proffered evidence, plaintiff must still show that a factual dispute exists regarding whether the restaurant's sales were over $500,000 per year, and the court now turns to plaintiff's assertions. *Fontánez-Núñez*, 447 F.3d at 54-55. *See Guohua Liu v. Elegance Restaurant Furniture Corp.*, No. CV 15-5787, 2017 WL 4339476, at *3 (E.D.N.Y. Sept. 25, 2017) ("Even where a plaintiff raises credibility issues with respect to a business's tax returns, he cannot survive summary judgment without affirmative evidence to support gross sales over $500,000.")

    2.  Plaintiff's proof.

Plaintiff's estimates about the cost of the average delivery and the number of deliveries are based on his own observations. *Contrast Guohua Liu,* 2017 WL 4339476, at *3 (holding plaintiff had not demonstrated genuine issue of material fact as to whether sales exceeded $500,000, where he speculated about business's costs, offering estimates as to how many other employees the business had and how much money they were paid). If one accepts plaintiff's

---

[7]Calculating $9 per hour x 40 hours per week x 52 weeks = $18,720 x 2 = $37,440.

estimates about the number of deliveries and their average cost, adding in a smaller amount for takeout, he exceeds the $500,000 threshold. *Compare Hurtado v. Raly Development, Inc.*, 2012 WL 3687488, at *7-8 (S.D. Fla. Aug. 27, 2012) (denying summary judgment for defendants where the disputed sum was close to $500,000, and there was evidence of cash income that was not included in bank account statements), *with Jian Long Li,* 35 F. Supp. 3d at 306 (holding that summary judgment was granted when disputed amount, even when adding in the amounts that might be missing from defendant's calculations, was not close to $500,000).

 Plaintiff's proof at this stage is not without problems. He relies solely on his memory to estimate how much business the restaurant did. At his deposition, when asked if he had any records concerning his earnings, including his own tax returns, plaintiff became argumentative, finally responding that he might have some receipts from his two years of work, but he moved and "can't locate them." (#39 at 53, 55-58, 67.) In plaintiff's declaration in support of his opposition to defendants' motion for summary judgment, he somewhat incredibly states, with apparent certainty, a range for how much each delivery cost, what percentage of customers paid with cash versus credit cards, the ratio of delivery to takeout orders, and how often and for how many hours he was out on deliveries, all based on his memory, years after he left his job. (#37-4.).

 Nevertheless, viewing the record in the light most favorable to the plaintiff and attributing all reasonable inferences in his favor, as the court must do, *Santiago-Ramos,* 217 F.3d at 50, plaintiff has established there is a factual dispute that must be resolved at trial. As the evidence stands now, whether the restaurant did $500,000 of business turns on very specific disputed questions concerning the number and cost of deliveries and takeout orders, and the number of cash versus credit card payments. For example, the owner of the restaurant, without

any documentary evidence, states that there was a minimum of $10 for credit card charges, but there was no minimum for deliveries, and "many delivery orders are only for a few dollars, under $10." (#36-3 at 2.) This is in contrast to plaintiff's affidavit stating that delivery orders were $20 to $30 each. (#37-4 ¶ 8.)  If, as plaintiff does, one calculates 45 deliveries at $25 each times 7 days times 52 weeks, the gross receipts for the restaurant in one year are $409,500. (#37 at 9 n.5.) If one reduces the number of deliveries to 30 per day at $20 per delivery, the gross receipts drop to $218,400. If a factfinder were to find that the gross receipts for delivery were $409,000, it might well be that he or she could infer that if one added receipts for takeout orders, the total receipts were over $500,000. If delivery receipts only totaled $219,000, however, it would be harder to make up the difference with takeout.[8]

In short, plaintiff has demonstrated that there is a genuine issue of fact for trial.


V. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment is DENIED.




/s/ Page Kelley
Page Kelley
United States Magistrate Judge

August 2, 2018

---

[8] Sorting through the parties' claims about the value of each delivery order and the number of deliveries is made even harder by the fact that the parties both appear to be exaggerating their claims. For instance, if one accepts the owner's assertions that there were about 750 deliveries per month, and they cost about $10 each, (#36-3 at 2), deliveries would only come to $90,000 per year. If, as the owner states, the restaurant "relies mostly on deliveries," *id.*, then the owner's estimates of the price per delivery and/or the number of deliveries cannot be correct, given that the restaurant grossed over three times that much, according to its tax returns. Similarly, a factfinder might well be skeptical of plaintiff's claims that he made 40 to 50 deliveries every single day of the year, each costing between $20 and $30, totaling over $400,000 for deliveries in one year. (#37 at 9.)